UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATALIA DANIELLE MIDDLETON,

Plaintiff,

*– against –*

NYC HEALTH AND HOSPITALS LINCOLN EMERGENCY ROOM,

Defendant.

**OPINION & ORDER**

24-cv-8216 (ER)

RAMOS, D.J.:

Natalia Danielle Middleton, proceeding *pro se* and *in forma pauperis*, filed an amended complaint on April 28, 2025, asserting claims for unlawful seizure and procedural due process violations pursuant to 42 U.S.C. § 1983, as well as for violations of the New York Mental Hygiene Law ("MHL") § 9.27, and for false and fraudulent psychiatric examination, all in connection with her involuntary hospitalization in May 2024. Doc. 8. Before the Court is New York City Health and Hospitals' ("NYCHH") motion to dismiss. Doc. 18. For the reasons stated below, NYCHH's motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

On May 1, 2024, Middleton was at her mother's residence in the Bronx with her infant child. Doc. 8 ¶ 7. When she attempted to leave, her mother called the police, and shortly thereafter officers from the 41st precinct arrived. *Id.* ¶ 8. After speaking with the police, Middleton attempted to return to her own apartment with her child, and was allegedly tackled, choked, and handcuffed by several officers. *Id.* ¶ 9. Middleton alleges that she was not shown an arrest warrant nor read her *Miranda* rights. *Id.*

Middleton was handcuffed and transported in an emergency medical service vehicle to a NYCHH facility, the Lincoln Emergency Room. *Id.* ¶ 10. She remained in handcuffs after her arrival. *Id.*

Middelton alleges that from May 2 until May 15, 2024, she was held against her will and forcibly medicated. *Id.* ¶¶ 12–13. During that time, she never received a proper psychiatric evaluation, despite her requests. *Id.* ¶¶ 11, 13. She was told that she must take specific medication to be discharged; however, she was not informed as to why the medication was necessary. *Id.* ¶ 14. She repeatedly stated that "taking [the] medication should not be mistaken as an agreement with any diagnosis or justification for the forced separation from her child." *Id.*

When Middleton was discharged, she was provided with a document stating she was admitted pursuant to MHL § 9.27[1]; however, Middleton alleges that the documentation does not identify who authorized the detention nor contain the requisite physician certifications. *Id.* ¶ 15. Middleton's insurance was subsequently billed over $30,000 for her stay. *Id.* ¶ 16.

In her claims for relief, Middleton states that she "intends to introduce relevant hospital policy and procedure documents as exhibits and factual support for these claims," and further that such documents will "demonstrate systemic failures by

---

[1] MHL § 9.27 specifies the required procedures for involuntary hospital admissions. N.Y. Mental Hyg. Law § 9.27 (McKinney). Subsection (a) provides:

> The director of a hospital may receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians, or upon the certificates of an examining physician and a psychiatric nurse practitioner. Such certificates shall be accompanied by an application for the admission of such person. The examination may be conducted jointly but each certifying practitioner shall execute a separate certificate.

*Id.* (a).

[NYCHH] to adhere to required state protocols and federal protected rights, including but not limited to the failure to ensure proper legal process, qualified psychiatric evaluation, and documentation in accordance with applicable laws." *Id.* at 2.

**B. Procedural Background**

Middleton filed her complaint on October 28, 2024, against Lincoln Medical Center and three individual staff members. Doc. 1.[2] On March 6, 2025, Chief Judge Laura Taylor Swain found that all of Middleton's claims were insufficiently pled and granted Middleton leave to amend the complaint. Doc. 5. With respect to the claims against Lincoln Medical Center, Chief Judge Swain stated that while that specific facility did not have the capacity to be sued, NYCHH did. Doc. 5 at 6.[3] Chief Judge Swain further advised Middleton that if she chose to replead her claims against NYCHH, she "must allege facts showing (1) the existence of an [NYCHH] policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of [Middleton's] constitutional rights." *Id.*

On April 28, 2025, Middleton filed her amended complaint against just NYCHH. Doc. 8. On April 29, 2025, the case was assigned to this Court. On July 2, 2025, NYCHH filed a letter motion seeking leave to file a motion to dismiss, which the Court granted on August 1, 2025. Docs. 14, 16. NYCHH filed its motion to dismiss on September 29, 2025. Docs. 18. In its motion, NYCHH argues that Middleton fails to state a § 1983 claim against NYCHH as she fails to allege *Monell* liability. Doc. 20. NYCHH

---

[2] That same day, Middleton filed a separate lawsuit against a police officer involved in her arrest. *See Middleton v. Infante*, 24-cv-8217.

[3] The claims against the three staff members failed to state a claim because the complaint did not include any allegations about what the staff members personally did. Doc. 5 at 4–5.

further argues that Middleton's state law claims are barred as she does not allege that she served the city with a notice of claim within 90 days of the alleged incident, as is required by state law. *Id*.

On January 16, 2026, Middleton filed a notice of claim with this Court which is dated January 14, 2026, Doc. 25, and a request that the Court take judicial notice of: NYCHH's Patient Bill of Rights available on their website; New York Mental Hygiene Law; discharge and medication logs from her stay at NYCHH to be filed under seal; and the fact that Middleton was 21 years of age at the time of the incident, Doc. 26.[4]

On February 27, 2026, Middleton filed an opposition to NYCHH's motion to dismiss, Doc. 31, and on March 9, 2026, NYCHH filed a reply, Doc. 32.[5]

## II. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[4] Middleton does not ask the Court to take judicial notice of any of these documents in her opposition to NYCHH's motion to dismiss. Given her *pro se* status, the Court would ordinarily consider the request anyway; however, consideration of the documents does not impact the Court's analysis.

[5] On March 25, 2026, Middleton requested leave to file a sur reply to address two arguments present in NYCHH's reply that she asserted were not raised in the initial motion to dismiss. *See* Doc. 34. On March 26, 2026, NYCHH opposed the request on the grounds that one of the arguments was raised in the initial motion to dismiss and the second was directly responsive to a new argument Middleton raised in her opposition. *See* Doc. 35. On April 1, 2026, the Court denied Middleton leave to file a sur reply. Doc. 37.

To survive a 12(b)(6) motion to dismiss, a complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To do so, a plaintiff must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 570 (indicating that if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the complaint must be dismissed"). "A plaintiff who has failed adequately to state a claim is not entitled to discovery." *Main St. Legal Services, Inc. v. National Security Council*, 811 F.3d 542, 567 (2d Cir. 2016) (citing *Iqbal*, 556 U.S. at 686).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). However, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Id.* at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## III. DISCUSSION

### A. 42 U.S.C. § 1983

NYCHH argues that Middleton's § 1983 claims must be dismissed because NYCHH's liability is governed by *Monell* and she fails to allege facts required to demonstrate *Monell* liability. Doc. 20 at 8–13. Middleton does not dispute that NYCHH's §

1983 liability is governed by *Monell* but rather argues that she adequately alleges facts required for *Monell* liability and for her underlying constitutional claims. Doc. 31 at 3–7.

"NYCHHC is a public benefit corporation created under the New York City Health and Hospitals Corporation Act, and courts in this District consistently treat it as a municipal entity subject to liability under § 1983 as governed by *Monell* and its progeny." *Balasinkam v. Nyc Health + Hospitals*, No. 25-CV-01667 (ER), 2026 WL 1256409, at *5 (S.D.N.Y. May 6, 2026) (collecting cases).

*Monell* liability is a particular theory of liability for § 1983 claims against municipalities. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983"); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692). To succeed on a *Monell* claim "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and citation omitted). However, "boilerplate assertions of municipal policy are insufficient to state a claim for *Monell* liability." *Alexander v. New York City Department of Education*, No. 19-CV-7023 (AJN), 2020 WL 7027509, at *12 (S.D.N.Y. Nov. 30, 2020) (quoting *Felix v. City of New York*, 344 F. Supp. 3d 644, 653–54 (S.D.N.Y. 2018)).

A plaintiff may satisfy the "custom or policy" requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal quotations and citations omitted).

Based on the allegations contained in her amended complaint, the Court agrees that Middleton has not alleged a *Monell* violation. Middleton's complaint alleges facts concerning her arrest, her forced detention, her forced medication, and her ultimate discharge; however, she does not include any facts that detail a policy or custom of NYCHH. Doc. 8. Though in her claims for relief, she notes that she "intend[ed] to introduce relevant hospital policy and procedure documents as exhibits and factual support for these claims," *see id.* at 2, in over a year since her amended complaint was filed, she has not yet done so.

As Middleton is proceeding *pro se*, the Court may consider additional factual allegations she includes in her opposition. *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). However, even considering those additional facts, Middleton does not state a *Monell* claim.

As it relates to *Monell* liability,[6] Middleton alleges that the NYCHH had an institutional custom of "conditioning discharge on medication compliance without a court order, without diagnosis explanation, and without informed consent." Doc. 31 at 4. Additionally, she alleges that NYCHH failed to train its staff on: the Constitution's substantive requirements to initiate an involuntary commitment; MHL's procedural requirements to initiate an involuntary commitment; patients' right to refuse medication absent a court order; the obligation to independently verify the lawfulness of police-initiated transports; and the duty to verify a patient's identity before initiating an involuntary confinement.[7] *Id.* at 4–5.

While these allegations do provide support for the alleged policies and customs that are relevant to Middleton's claims, the Court agrees with NYCHH that they are still insufficient to state a claim. With respect to her argument that NYCHH has an institutional custom of conditioning discharge on medication without a court order, explanation, or informed consent, generally, "courts have dismissed custom or practice *Monell* claims that rely solely on one instance of conduct to prove the existence of a persistent and widespread custom." *Vasquez v. City of New York*, No. 20-CV-4641 (ER), 2023 WL 8551715, at *4 (S.D.N.Y. Dec. 11, 2023). As NYCHH correctly argues, Doc. 32 at 4,

---

[6] Middleton also alleges additional facts relevant to the merits of her federal constitutional and state law claims, including that NYCHH never verified her identity throughout her detention; that she was "forcibly administered psychiatric medication despite her explicit, repeated refusal . . ."; and that the basis for her detention was her mother's unverified and incorrect allegation that Middleton had a psychiatric history of bipolar disorder. Doc. 31 at 1–2.

However, these additional facts do not impact the Court's reasoning on the issue of *Monell* liability discussed above.

[7] In her section on *Monell* liability, Middleton also alleges that NYCHH failed to obtain "two-physician certification documentation," failed to verify her identity, and failed to record who authorized her admission showing "institutional indifference" to MHL § 9.27's requirements affecting all involuntary admitted patients. Doc. 31 at 4. However, this argument is principally about compliance with MHL § 9.27's statutory guidelines, and so the Court does not examine them in connection with her federal claims.

neither in her amended complaint nor her opposition does Middleton identify other incidents of constitutional violations according to this alleged institutional custom.

Similarly, with respect to Middleton's failure to train allegations, as a general matter, "failure to train arguments are grounded in the showing of multiple, similar civil rights complaints in comparable contexts to the alleged constitutional injuries or close temporal proximity." *Vasquez*, 2023 WL 8551715, at *6 (citing *Brenton v. City of New York*, 404 F. Supp. 3d. 799, 818–19 (S.D.N.Y. Sep. 3, 2019)). As detailed above, none of the facts in Middleton's complaint nor her opposition detail additional instances of similar violations.

Liberally construing Middleton's opposition, she also seems to argue that NYCHH is liable for a failure to train under the "single-incident theory." Doc. 31 at 4–5. In limited circumstances, courts have found that a single unconstitutional violation may be sufficient to demonstrate that a government entity was deliberately indifferent to establish *Monell* liability under a failure-to-train theory. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 391–93 (S.D.N.Y. 2013) (plaintiff successfully alleges failure-to-train *Monell* liability under the single-incident theory for alleged constitutional violations in connection with police officers' use of deadly force). Under the single-incident theory, "a municipality can be found to be deliberately indifferent based on a single constitutional violation where 'the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under [Section] 1983 without proof of a pre-existing pattern of violations.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 64 (2011)); *see McCormick v. County of Westchester*, No. 19-CV-2916 (KMK), 2023 WL 2632204, at *13 (S.D.N.Y. Mar. 24, 2023) ("Since *Chamberlin*, '[c]ourts in this Circuit

and others have found that the single-incident theory is available only when the evidence reflects a complete lack of any training or where the training is so inadequate that it amounts to a lack of training.'") (internal citations and quotations omitted).

However, in her amended complaint and her opposition, Middleton fails to allege non-conclusory facts necessary to plausibly allege a "complete lack of training" under this theory. *Compare Chamberlain*, 986 F. Supp. 2d 363 at 393 (finding that a plaintiff satisfied the single-incident theory where they alleged that city police knew "to a moral certainty" that they would encounter "emotionally disturbed people" and identified the police "manual section on [emotionally disturbed people]" which "contain[ed] no guidance and no indication that [police] officers receive any training regarding interacting with [emotionally disturbed people]") *with McCormick*, 2023 WL 2632204, at *13 (finding that a plaintiff did not satisfy the single-incident theory where they "broadly allege[d]" that the municipality failed to adequately train and where, "unlike *Chamberlain*, . . . Plaintiff has not alleged any facts from any manual, website, or any Jail training practice or policy from which he can plausibly allege an absence of training on" the issues identified in the complaint). As discussed above, while Middleton alleges that she intended to introduce evidence of NYCHH's own policies and procedures to demonstrate

their deficiencies, she has not done so.[8] Accordingly, Middleton's § 1983 claims against NYCHH are dismissed.[9]

NYCHH requests that these claims be dismissed with prejudice, Doc. 32 at 7, while Middleton requests that she be granted leave to amend, Doc. 31 at 7. Generally, leave to amend should be freely granted. *Jin v. Metropolitan Life Insurance Co*., 310 F.3d 84, 101 (2d Cir. 2002); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, in her order dismissing the initial complaint, Chief Judge Swain granted Middleton leave to file an amended complaint and specifically stated that to state a claim against NYCHH, Middleton would need to "allege facts showing (1) the existence of an [NYCHH] policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of [Middleton's] constitutional

---

[8] In her opposition, Middleton also argues that dismissal is inappropriate prior to discovery, in part because

> [w]hether two-physician certifications exist, who authorized Petitioner's admission, what identity verification procedures were followed, what dangerousness assessment—if any—was conducted, and what institutional policies govern involuntary admissions at [NYCHH] are all factual matters that cannot be resolved on a Rule 12(b)(6) motion. . . . Dismissal before discovery would effectively immunize a municipal hospital from § 1983 liability simply by withholding the records that would confirm the violation.

Doc. 31 at 5. However, Middleton must still allege non-conclusory facts making her claims plausible to state a claim and be entitled to discovery. *See McCormick*, 2023 WL 2632204 at *13–14; *see also Main St. Legal Services, Inc*., 811 F.3d at 567 ("A plaintiff who has failed adequately to state a claim is not entitled to discovery.") (citing *Iqbal*, 556 U.S. at 686).

[9] To the extent that Middleton also argues that NYCHH is subject to *Monell* liability due to an official policy which resulted in the violation of her constitutional rights, as NYCHH correctly points out, her own characterization of NYCHH policy undermines that argument.

In her opposition, Middleton has a section titled "NYCHH's Own Patient Rights Policy Confirms the Violations," in which she outlines the policy as providing that patients have the right to: "(i) refuse treatment and be told what effect this may have on their heath; (ii) receive all information needed and give informed consent for any proposed procedure or treatment, including possible risks and benefits; and (iii) receive considerate and respectful care free of unnecessary restraints." Doc. 31 at 4. She continues, "NYCHH's own policy establishes the standard it failed to meet . . . ." As Middleton's own briefing appears to acknowledge that the official NYCHH patient rights policy comported with the legal requirements, she has failed to allege *Monell* liability on the grounds that an official policy caused her injuries.

rights." Doc. 5 at 6. As Middleton has already received leave to file an amended complaint with specific instructions concerning what is required to allege *Monell* liability for NYCHH, the Court denies Middleton these claims with prejudice.

**B. Remaining State Law Claims**

Having resolved all of Middleton's federal claims against them, the Court declines to adjudicate Middelton's related state law claims. Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (stating that, under § 1367(a), as under *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), supplemental jurisdiction applies to state-law claims that arise "from the same facts" as a federal-law claim over which a court has original jurisdiction). The doctrine of supplemental jurisdiction is traditionally "a doctrine of discretion, not of plaintiff's right." *Kolari v. N.Y.-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers*, 383 U.S. at 726). Subsection (c) of § 1367 enumerates circumstances in which a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)." 28 U.S.C. § 1367(c). One such circumstance is where, as here, "the district court has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3). The state law claims are dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated above, NYCHH's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 18, and close the case.

It is SO ORDERED.

Dated: July 9, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.